IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPRINGHEAD, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 0436 |
| v. ) | |
| ) | Hon. Judge John Z. Lee |
| BYRON T. CROWELL, ALBERT C. ) | |
| BASHAWATY, and SOLUTION ) | |
| PUBLISHING, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this diversity action, plaintiff Springhead, LLC ("Springhead"), an Illinois limited liability company ("LLC"), brings suit against defendant Solution Publishing, LLC ("Solution"), a Nevada LLC, and individual defendants Byron T. Crowell ("Crowell") and Albert C. Bashawaty ("Bashawaty"). Springhead alleges that it entered into an Agreement with Crowell and Bashawaty, acting as and/or on behalf of Solution, for Springhead to act as a sales representative for Solution. Springhead further claims that Solution has failed to pay Springhead its commission payments due under the Agreement. Defendant Crowell now moves to dismiss the claims asserted against him personally, arguing that as managing member of Solution, he is not subject to suit in his individual capacity in connection with Springhead's agreement with Solution. For the reasons discussed below, Crowell's motion to dismiss is granted.

## Background

The facts alleged in the Amended Complaint are assumed to be true for purposes of this motion to dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

In November 2010, Defendants Crowell and Bashawaty, acting on behalf of Solution, entered in an agreement with Springhead, whereby Springhead agreed to provide business development services to Solution in exchange for commission fees. (Am. Compl. ¶¶ 25-41.) This agreement was amended in February 2011. (*Id.* ¶ 27.) To complicate matters, however, Solution had been administratively dissolved by the State of Nevada in 2005 and, by the time the agreement was executed, was not in good corporate standing. (*Id.* ¶¶ 8, 9.)

Crowell was served with the Complaint in this action on January 24, 1013. (*Id.* ¶ 14.) Then, on or about January 31, 2013, Crowell filed a request to reinstate Solution as a Nevada limited liability company retroactive to 2005. (*Id.* ¶ 15.) On February 26, 2013, the State of Nevada granted this request. (*Id.* ¶ 17.)

Now that Solution has been reinstated as a Nevada LLC, Crowell contends that he must be dismissed as an individual defendant because members of a reinstated LLC cannot be held liable for obligations incurred by the LLC during the period of dissolution.

**Discussion**

As an initial matter, the parties dispute which state's law will govern this analysis. Springhead argues that Illinois law should apply, while Crowell contends that Nevada law controls. The Court finds that Nevada law applies because matters relating to the operation of a Nevada limited liability company are controlled by Nevada law. *See In Re Morris*, 30 F.3d 1578, 1582 (7th Cir. 1994) ("Illinois courts look to the laws of a company's state of incorporation when deciding issues regarding a corporation's existence and its capacity to engage in transactions such as those at issue here.") (citing *Perry v. Western Motor Car Co.,* 279 Ill. App. 195, 202-03 (Ill. App. Ct. 1935) ("The manner of doing business in [Illinois] may be controlled by the statutes of [Illinois], but the organization and the manner of its dissolution and

its obligations thereunder are subject to the control of the State which gave it birth.")); *see also Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) (citing *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996) (determination of "liability . . . for intra-corporate affairs almost invariably depends on the law of the place of incorporation.")). *Cf. The Herrick Grp. & Assocs. LLC v. K.J.T., L.P.*, No. 07-0628, 2009 WL 2596503, at \*\*4-5 (E.D. Pa. Aug. 20, 2009) (federal district court sitting in diversity applied Nevada LLC law to determine that reinstated LLC plaintiff had capacity to bring suit). Because Nevada law controls this issue, the court must apply Nevada's "law as declared by its supreme court, or in the absence of a statement by that court, by its intermediate appellate courts." *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir. 1994). The cases applying Illinois law upon which Springhead relies are, therefore, inapposite.

Here, Nevada has enacted Chapter 86 of the Business Associations Act (the "Act"), which governs limited liability companies. *See* Nev. Rev. Stat. §§ 86.269, *et seq.* Section 86.276(5) of the Act provides that "a reinstatement pursuant to this section relates back to the date on which the company forfeited its right to transact business under the provisions of this chapter and reinstates the company's right to transact business as if such right had at all times remained in full force and effect." Here, Solution was reinstated back to November 1, 2005, which predates the execution of the Agreement with Springhead. Therefore, the plain language of the Act will control and Solution will be deemed to have been the party who executed the agreement in question, unless there is reason to believe that Nevada courts would hold otherwise.

To date, only one state court and one federal district court in Nevada have interpreted Section 86.276(5). In *AA Primo Builders, LLC v. Washington*, 245 P.3d 1190, 1195 (Nev. 2010), the question presented to the Nevada Supreme Court was "whether a Nevada limited liability

3

company whose charter is revoked, then reinstated, may litigate a pending suit to conclusion." Plaintiff AA Primo was a Nevada limited liability company that filed suit against a number of former clients for failure to pay for construction services. When the lawsuit was filed, AA Primo was an LLC in good standing under Nevada law. However, on December 1, 2008, while the lawsuit was ongoing, the Nevada Secretary of State found that AA Primo had failed to pay its annual fee and file the required papers, and deemed AA Primo to be in default for the prior year. As a result, AA Primo's charter was revoked pursuant to Nev. Rev. Stat. § 86.274(2) "and its right to transact business [was] forfeited." *Id.*

The defendants filed a motion to dismiss, arguing that because AA Primo no longer had the "right to transact business," it could not continue to litigate the lawsuit. *Id.* In response, AA Primo applied for reinstatement of its charter, and the Nevada Secretary of State restored it to good standing retroactive to December 1, 2008. Nevertheless, the trial court granted defendants' motion and dismissed the action.

The Nevada Supreme Court reversed the lower court's dismissal of the suit on two separate grounds. First, the court held that because Nev. Rev. Stat. § 86.505 provides that "a dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it," AA Primo's right to litigate survived the revocation of its charter. *Id.* at 1196. In so holding, the court rejected the defendants' policy-based argument that allowing AA Primo to continue its suit "rewards noncompliance" with Nevada law. *Id.* at 1197. As the court noted, Chapter 86 of the Nevada Revised Statutes "specifies the penalties appropriate to impose for operating without a current charter, distinguishing between entities with lapsed charters and those doing business without ever having been properly formed." *Id.* Whereas the fines for doing business as an LLC without

4

obtaining authorization in the first instance may be up to $10,000.00, *see* Nev. Rev. Stat. § 86.213(1), the penalty for reinstating a revoked charter is only $75.00, and there are no fees associated with the revocation itself. Nev. Rev. Stat. § 86.272(3). Moreover, Nev. Rev. Stat. § 86.361 "provides that members of an unchartered entity risk individual liability unless the default is cured," which would not provide an incentive for LLCs "to litigate with wanton abandon." *Id.* Thus, the court explained, the Nevada Legislature had "addressed the penalties for an administrative default leading to charter revocation" and it was clear that "loss of capacity to sue [was] not among them." *Id.*

Second, the Nevada Supreme Court held that "[w]hen AA Primo succeeded in reinstating its charter, it brought itself under NRS 86.276(5)," which, "[b]y its plain terms . . . pardoned AA Primo's administrative default and restored its rights retroactive to the date of revocation." *Id.* Indeed, "NRS 86.274(5) required the district court to treat AA Primo as if its charter had never been revoked." *Id.* Thus, the dismissal order should have been vacated by the lower court upon AA Primo's motion. In fact, the court went on to observe that, rather than dismissing the case, the better practice would have been for the trial court to stay the proceedings and allow AA Primo to seek reinstatement. *Id.* at 1198.

*Nichiryo America, Inc. v. Oxford Worldwide, LLC*, No. 03:07-cv-00335, 2008 WL 2457935, at *3 (D. Nev. Jun. 16, 2008), also is instructive. There, the dispute involved a number of purchased orders that Oxford had placed with Nichiryo between November 11, 2005, and March 20, 2007, but failed to pay. *Id.* at *1. Oxford had registered as a Nevada LLC on May 18, 2005. *Id.* at *1. But, on June 1, 2007, Oxford's limited liability status was revoked by the State of Nevada; it was reinstated shortly thereafter on October 5, 2007. *Id*. at *3. In addition to suing Oxford, Nichiryo sued Oxford's members individually, arguing that they had continued to

place purchase orders under Oxford's name even though Oxford had been dissolved for several months in 2007. The district court disagreed.

The court first noted that, as Nichiryo correctly had pointed out, Nev. Rev. Stat. § 86.361 provides that "[a]ll persons who assume to act as a limited-liability company without authority to do so are jointly and severally liable for all debts and liabilities of the company." *Id.* at *3. However, the court further explained that, under Section 86.276, reinstatement was retroactive to the date the defendant had forfeited its right to transact business as a going concern. Therefore, because "Oxford's right to transact business was reinstated 'as if such right had at all times remained in full force and effect,'" the individual defendants "did not act as a limited-liability company without authority to do so" and hence were not individually liable. *Id.* (quoting Nev. Rev. Stat. § 86.276(5)). While the court expressed some concern over plaintiff's argument that Oxford was "an unfunded shell entity," it nevertheless found that there was no evidence to support these allegations, and accorded them no weight. *Id.*

Taking these two cases together, the Court finds that their reasoning extends to the instant motion. Here, although Solution had been administratively dissolved at the time the agreement was executed, Nevada law is clear that once Solution was reinstated, that reinstatement was retroactive to the time of dissolution. Thus, the agreement with Springhead is properly deemed as being between Springhead and Solution, not Springhead and Crowell, and the proper defendant is Springhead, not Crowell individually.

For the reasons discussed herein, Defendant Byron T. Crowell's Motion to Dismiss [dkt. 15] is granted.

Dated: December 16, 2013   John Z. Lee
U.S. District Court Judge