# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SPRINGHEAD, LLC, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | No. 13 C 436 |
| v. ) | |
| ) | Judge John Z. Lee |
| SOLUTION PUBLISHING, LLC, ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

## MEMORANDUM OPINION AND ORDER

This diversity action arises from a contractual dispute between Plaintiff/Counter-Defendant Springhead, LLC ("Springhead") and Defendant/Counter-Plaintiff Solution Publishing, LLC ("Solution"). Springhead filed suit to recover unpaid commissions allegedly owed for services provided to Solution under the parties' contractual agreement. Solution responded by filing a counterclaim, alleging in part that Springhead breached the parties' oral modification to that contract when it failed to meet the agreed upon sales targets. Both parties move for partial summary judgment. Springhead moves for partial summary judgment as to Count I of Solution's counterclaims. Solution moves for summary judgment as to Count II of Springhead's First Amended Complaint.

## Factual Background[1]

Solution is an online publisher of specialized journals. Def.'s LR 56.1(a)(3) Stmt. ¶ 5. Individuals subscribe to Solution's journals to receive publications by email and to access content via websites. *Id.* Subscription is free, and Solution generates the majority of its revenue through "lead generation." *Id.* ¶¶ 6–7. As part of this process, Solution uses software to monitor the content read by its subscribers and to determine their interests. *Id.* ¶ 9. Solution then

---

[1] The following facts are undisputed unless otherwise stated.

delivers additional content, such as podcasts or trial software, to those subscribers who might be interested in a particular subject. *Id.* ¶¶ 9–10. After these subscribers register to receive the content, Solution sends the contact and registration information that it obtained from its subscribers as a "lead" to its clients in the form of a data file. *Id.* ¶¶ 10–11.

Solution also generates revenue by providing its clients "list rental" campaigns. *Id.* ¶¶ 13–15. In these campaigns, clients provide Solution with an advertisement in HTML format, which Solution sends out as an email to its subscribers that fit certain criteria. *Id.* ¶¶ 13–15.

In November 2010, Solution entered into a written agreement with Springhead, whereby Springhead agreed to provide business development services to Solution in exchange for commission fees. *Id.* ¶ 17. Up until this time, Solution had been mostly generating revenue from clients that were referred directly by media agencies (or "aggregators"). Def.'s LR 56.1(b)(3)(C) Stmt. ¶ 3. Under the contract, Springhead sent proposals to prospective clients describing Solution's business in an effort to obtain new clients for Solution. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 21–22.

The parties' written agreement contained a clause stating, "No amendment, change or modification of this document shall be valid unless it is in writing and signed by all the parties hereto and expressly states that it is an amendment, change or modification of this Agreement." Pl.'s LR 56.1(a)(3) Stmt. ¶ 10. According to Solution, however, the parties subsequently agreed to an oral modification of the contract, whereby Springhead promised to reach monthly sales levels of $144,000 by July 2012 in exchange for Solution giving Springhead's client campaigns priority over those of the other "aggregator" clients. Def.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 13–16.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## Analysis

The parties each move for partial summary judgment. Springhead seeks partial summary judgment on Count I of Solution's Counterclaim. *See* Pl.'s Mot. Partial Summ. J. Count I alleges that Springhead breached the parties' contract when they failed to meet the agreed upon-sales targets. Def.'s Countercl. ¶¶ 28–32. Solution seeks partial summary judgment on Count II of the First Amended Complaint. *See* Def.'s Mot. Partial Summ. J. Count II of the First Amended Complaint alleges violations of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. 120/1 *et seq*. Pl.'s 1st Am. Compl. ¶¶ 60–74. For the following reasons, the Court denies Springhead's motion but grants Solution's motion.

## I. Springhead's Motion as to Count I of Solution's Counterclaim

In Count I of its counterclaims, Solutions alleges that Springhead breached its oral agreement with Solution to achieve certain sales goals. Springhead sets forth two arguments in support of summary judgment as to this claim. First, Springhead asserts that, because the contract expressly forbids oral modifications, any oral agreement was invalid. In addition, Springhead claims that, in the event that oral modification of the contract were permitted, the terms of the alleged oral modification are too vague to be enforceable. Neither of these arguments is persuasive.

First, it is "well settled" in Illinois that "the terms of a written contract can be modified by a subsequent oral agreement even though, as in this case, the contract precludes oral modifications." *Tadros v. Kuzmak*, 660 N.E.2d 162, 170 (Ill. App. Ct. 1993) (citing cases). Springhead cites no authority to the contrary and, indeed, appears to concede this point entirely in its reply brief. *See generally* Pl.'s Reply Mot. Summ. J.

Accordingly, for an alleged oral modification to be valid, it must "simply satisfy all the criteria for a valid enforceable contract, including, offer, acceptance and consideration." *Hannafan v. Hannafan*, 959 N.E.2d 1280, 1286 (Ill. App. Ct. 2011). Here, Solution has created a genuine issue of material fact as to each one of these criteria. It has identified testimony to establish that Springhead agreed to meet a monthly sales target of $144,000 by July 2012; that Solution offered in exchange to give Springhead's clients a "priority" sales position in its system; and that the parties subsequently changed how they operated under the contract because of the modification. *See* Def.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 13–17.

Springhead also argues that, to the extent that the original agreement could be modified orally, the alleged oral modification is unenforceable because "Solution's testimony is all over

the map" with respect to a critical term to the alleged modification—the sales target. Pl.'s Mot. Partial Summ. J 13. According to Springhead, it is entirely unclear from the record what the exact sales target was, because Solution's owner, Byron Crowell, testified in his deposition that, "in his view, $135,000 . . . would have satisfied this sales target," $120,000 would not have, and $130,000 "would have been very close." *Id.* at 8. But what Solution's owner might have deemed acceptable under a set of hypothetical circumstances is irrelevant to whether the parties validly agreed to modify the contract in this case. Crowell testified on several occasions in his deposition that $144,000 was the agreed-upon sales target. *See* Pl.'s LR 56.1(a)(3) Stmt., Ex. D, Crowell Dep. 119:7, 130:2, 131:2–3, Jan. 22, 2014. This term itself is hardly "vague" or "indefinite," and the evidence marshalled by Solution is sufficient to survive summary judgment as to this issue. Springhead's motion for partial summary judgment is denied.

## II. Solution's Motion as to Count II of First Amended Complaint

Count II of Springhead's First Amended Complaint alleges that Solution is liable to Springhead under the Illinois Sales Representative Act ("Act"), 820 Ill. Comp. Stat 120/1 *et seq*. The Act provides, "All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due." *Id.* 120/2. The Act defines the term "principal" as "a sole proprietorship, partnership, corporation or other business entity [that] . . . [m]anufactures, produces, imports, or distributes a product for sale." *Id.* 120/1(3)(A). Solution now moves for summary judgment on Count II, arguing it cannot be a "principal" under the Act, because it is a services company and does not sell "products" as contemplated by the Act.

5

Courts have consistently held that the word "product" as used in the Act refers to "tangible, manufactured goods, not [to] intangible items or services." *Kenebrew v. Conn. Gen. Life Ins. Co.*, 882 F. Supp. 749, 754 (N.D. Ill. 1995); *see*, *e.g.*, *Allen v. Giannecchini*, No. 08 C 6589, 2010 WL 8034236, at *4 (N.D. Ill. Sep. 7, 2010); *Formestic, Inc. v. Residential Warranty Corp.*, No. 96 C 6638, 1997 WL 51490, at *3–4 (N.D. Ill. Feb. 4, 1997); *English Co. v. NW Envirocon, Inc.*, 663 N.E.2d 448, 454–55 (1996). And, Solution argues, Springhead cannot point to any such tangible good Solution sells to bring it within the scope of the Act.

For its part, Springhead does not dispute that Solution primarily generates revenue through lead generation and list rental campaigns. Pl.'s Resp. 4. Springhead does, however, attempt to characterize these as "products," noting that Solution frequently provides its clients with subscriber information via a data file "akin to a downloaded software program." *Id.* at 6. The process, Springhead argues, is similar to ordering a pizza: a client "customize[s]" its order; Solution prepares a lead generation file; and then Solution "delivers" that file to the client. *Id.* at 9. This analogy is unpersuasive for reasons beyond the obvious fact that a pizza is a tangible, edible good, while subscriber information is not.

Solution's business involves generating business leads for its clients by connecting them with potential customers who subscribe to Solution's online publications. Simply because Solution may provide some of this subscriber information to its clients in the form of a data file does not transform that service into a tangible good. In other words, the means by which Solution communicates information with its clients does not change the fact that Solution is *doing* something, as opposed to *making* something. And this, as Springhead itself points out, is the essence of the distinction between a "service" and a "product." *See* Pl.'s Resp. 8 (quoting NATIONAL ARCHIVES, *Defining Key Concepts: Products vs. Services*, http://www.archives.gov/

preservation/ products/definitions/products-services.html (last visited Mar. 16, 2015)) ("'When a client asks "what can you make for me?" they are asking about products; when a client asks "what can you do for me?" they are asking about services.'").[2]

Finally, Springhead claims that a representative of Solution admitted that Solution manufactured "products." According to Springhead, during his deposition, Byron Crowell referred to lead generation and list rental campaigns as "advertising products," and this statement constitutes a legal admission and "should be the end of the discussion on summary judgment." Pl.'s Resp. 6; *see* Crowell Dep 77:6-10. But a word as it is used in everyday conversation does not necessarily have the same meaning as the word would have when appearing in a statute. *See People v. Harman*, 465 N.E.2d 1009, 1015 (Ill. App. Ct. 1984) ("[T]he meaning of words within the statute is dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction."); *see also Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002) ("The interpretation of a statute is a question of law."). Put another way, the fact that Crowell referred to Solution's services as "advertising products" in his deposition does not mean that its services are "products" within the meaning of the Act.

For these reasons, the Court grants Solution's motion for partial summary judgment as to Count II of the First Amended Complaint.

## Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion for partial summary judgment [56] and grants Defendant's motion for partial summary judgment [57].

---

[2] Along these lines, Springhead itself characterizes the provision of legal services as "plainly" constituting a "service," rather than a "product." Pl.'s Resp. 5. But, according to the logic that Springhead advances here, the legal advice that an attorney provides to a client would be transformed into a "product" if the advice is provided in a tangible form, such as in a written memorandum or an electronic email. Springhead's logic plainly proves too much.

7

**SO ORDERED**                    **ENTER: 3/18/15**

**JOHN Z. LEE**
**United States District Judge**